UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **STEVEN LEONARD**, individually and on behalf of all others similarly situated, *Plaintiff*, v. **WHETSTONE HOLDINGS, LLC**, a Florida registered company, *Defendant*. | Case No. CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiff Steven Leonard ("Plaintiff Leonard" or "Leonard") brings this Class Action Complaint and Demand for Jury Trial against Defendant Whetstone Holdings, LLC ("Defendant" or "Whetstone Holdings") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Leonard, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Leonard is a resident of Needles, California.

2. Defendant Whetstone Holdings is a Delaware registered company with its principal location in Doral, Florida. Defendant Whetstone Holdings conducts business throughout the United States.

1

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is located in this District and does business from this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and directed its wrongful conduct from here.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in May 2024 alone, at a rate of 144.5 million per day. www.robocallindex.com (last visited June 10, 2024).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Whetstone Holding provides working capital to small businesses throughout the US through a variety of companies including Alpine Funding Partners:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf



15. Alpine Funding Partners sends telemarketing solicitation text messages to generate business.

16. Unfortunately, some of the text messages that Alpine Funding Partners' sends are sent to consumers' phone numbers that are registered on the DNC, as per Plaintiff's experience.

17. Whetstone Holdings controls the hiring for its affiliated companies, including Alpine Funding Partners, which includes the hiring of outbound phone sales representatives:

18. In fact, on Indeed, a hiring website that also provides company reviews, lists job reviews for Alpine Funding Partners under the Whetstone Holdings umbrella:

---

[3] https://whetstoneholdings.com/
[4] https://whetstoneholdings.com/employment-opportunities/

4



19. Whetstone posted another job posting for Alpine on Salary.com:



20. According to the Linkedin profile of Anthony P., Senior Marketing Manager at Whetstone Holdings, Whetstone Holdings is in charge of new lead development. Anthony P. states

---

[5] https://www.indeed.com/cmp/Whetstone-Holdings-1/reviews
[6] https://www.salary.com/job/whetstone-holdings-llc/alpine-sales-agent/j202204180443490030740

5

that he oversees the operations and sales development for five call centers, including the providing of leads to all of the call centers, of which Alpine Funding Partners is one of those call centers:



[7]

21. Based on the above, Whetstone Holdings not only provides leads to its affiliated companies, including Alpine Funding Partners, but it also directs and ratifies the placement of telemarketing text messages to consumers to generate business, including to the Plaintiff.

22. Upon information and belief, Whetstone Holdings benefits financially from business that is generated through text messages that are sent on behalf of Alpine Funding Partners as it sends its profits up to its holding company Defendant Whetstone.

23. Whetstone holds 4 subsidiaries in total: Everest Business Funding, Vader Mountain Capital, Granite Merchant Funding, and Alpine Funding Partners. The only reason Whetstone holds these through its subsidiaries is so that it can have its subsidiaries do the TCPA violative

---

[7] https://www.linkedin.com/in/anthony-p-2a1a7015/

actions for its parent company Whetstone while shielding Whetstone from liability as Whetstone has been sued for TCPA violations before.

24. In response to these text messages, Plaintiff Leonard brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF LEONARD'S ALLEGATIONS

25. Plaintiff Leonard is the sole owner and user of his cell phone number ending in 3436.

26. Plaintiff Leonard has owned his cell phone number for over 12 years.

27. Plaintiff Leonard registered his cell phone number on the DNC on March 12, 2012.

28. Plaintiff Leonard uses his cell phone number for personal use only as one would use a landline telephone number in a home.

29. For years prior to Defendant's calls, Plaintiff Leonard has used his phone only for personal use, which includes communicating with friends/family and for other personal use such as scheduling appointments with a doctor.

30. Plaintiff Leonard pays for his cell phone. It is not reimbursed by any company.

31. Plaintiff Leonard has been inundated with calls and text messages from companies offering business funding loans.

32. Plaintiff Leonard believes that Alpine Funding Partners has called and/or texted him in the past, despite using his cell phone only for personal use, and despite having it registered on the DNC.

33. On June 9, 2024 at 8:09 AM, Plaintiff Leonard received an unsolicited text message to his cell phone from 385-429-1949:



34. The text message states clearly that it was sent by Alpine.

35. The text message provides the website address https://alpine.cash.business, which shows that the website is owned by Alpine Funding Partners:



36. When 385-429-1949 is called, an automated system identifies the company name Alpine Funding Partners.[9]

37. On June 9, 2024 at 12:34 PM, Plaintiff Leonard received a 2nd unsolicited text message to his cell phone from 385-429-1949:

---

[8] https://cash.business/alpine/

[9] Based on an investigation conducted by Plaintiff's attorneys

8



38. Plaintiff Leonard has never done business with the Defendant and has never consented to be texted by Whetstone Holdings or any of its affiliated companies.

39. The unauthorized solicitation text messages that Plaintiff received from or on behalf of the Defendant have harmed Plaintiff Leonard in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

40. Seeking redress for these injuries, Plaintiff Leonard, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

41. Plaintiff Leonard brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Alpine texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason the Defendant texted Plaintiff.

42. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Leonard anticipates the need to amend the Class definition following appropriate discovery.

43. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

44. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

 (a) whether the Defendant placed multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each text message;

 (b) whether the text messages constitute a violation of the TCPA;

 (c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

45. **Adequate Representation**: Plaintiff Leonard will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Leonard has no interests antagonistic to those of the Class, and the Defendant have no defenses unique to Plaintiff. Plaintiff Leonard and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Leonard nor his counsel have any interest adverse to the Class.

46. **Appropriateness**: This class action is also appropriate for certification because the Defendant have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Leonard. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Leonard and the Do Not Call Registry Class)**

47. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

48. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

49. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

50. The Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Leonard and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

51. The Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Leonard and the Do Not Call Registry Class received more than one text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

52. As a result of Defendant's conduct as alleged herein, Plaintiff Leonard and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

53. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Leonard requests a jury trial.

**STEVEN LEONARD**, individually and on behalf of all others similarly situated,

DATED this 7th day of July, 2024.

By: /s/ Stefan Coleman

Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
18117 Biscayne Blvd, Suite 4152
Miami, FL 33160
Telephone: (877) 333-9427

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*